IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | |
|---|---|
| JOHN A. HENRY, JR. <br> 3072 Queensgate Way <br> Mt. Pleasant, SC 29466, | * <br><br> * |
| Plaintiff, | * |
| v. | *   Civil Action No. _____ |
| MANSOOR EMRAL SHAOOL <br> 11012 Shaool Place <br> Hagerstown, MD 21742 | * <br><br> * |
| JANET EMRAL SHAOOL <br> 11012 Shaool Place <br> Hagerstown, MD 21742 | * <br><br> * |
| SASSAN EMRAL SHAOOL <br> 1741 Dual Highway <br> Hagerstown, MD 21740 | * <br><br> * |
| and | * |
| ADAM EMRAL SHAOOL <br> 11012 Shaool Place <br> Hagerstown, MD 21742 | * <br><br> * |
| Defendants. | * |

\* \* \* \* \* \* \*   ooo0ooo   \* \* \* \* \* \* \*

**COMPLAINT AND REQUEST FOR JURY TRIAL**

John A. Henry, Jr. hereby brings suit against Mansoor Emral Shaool, Janet Emral Shaool, Sassan Emral Shaool, and Adam Emral Shaool, and states:

**The Parties**

1.   John A. Henry, Jr., is an adult resident of the State of South Carolina.

2. Mansoor Emral Shaool and his wife, Janet Emral Shaool, are adult residents of the State of Maryland.

3. Sassan Emral Shaool is an adult son of Mansoor and Janet Shaool and is a resident of the State of Maryland.

4. Adam Emral Shaool is an adult son of Mansoor and Janet Shaool and is a resident of the State of Maryland.

**Jurisdiction and Venue**

5. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

6. Venue is proper pursuant to 28 U.S.C. § 1391, as the negotiations and agreement that give rise to plaintiff's claims occurred in Hagerstown, Maryland, and the defendants have their residences and principal office in Hagerstown, Maryland.

**Facts Common to All Counts**

7. The Shaool family is engaged in the development of residential and commercial real estate, primarily in Washington County, Maryland.

8. After working as a commercial real estate attorney in Washington, D.C., Mr. Henry worked in New York as associate general counsel of a large real estate development company, where he worked on the development of regional and super-regional shopping centers.

9. From his work developing shopping centers, Mr. Henry knew Dave Neuman, who had expertise in the leasing of stores in large shopping centers to national retailers. From the Spring of 2002 to the Spring of 2003, Mr. Henry and Mr. Neuman worked on the development of real estate projects in and around State College, Pennsylvania.

10. In or about April 2003, Sassan Emral Shaool, who had attended high school with John Henry, asked Mr. Henry to move to Hagerstown, Maryland, to help the Shaool family develop shopping centers in Hagerstown and throughout the Mid-Atlantic region.

11. Mr. Henry introduced the Shaools to Mr. Neuman, and they jointly convinced Mr. Neuman to join them in the development of shopping centers in Hagerstown and elsewhere.

12. Mansoor and Janet Shaool, Sassan Shaool, Mr. Henry, and Mr. Neuman agreed to form a partnership to develop shopping centers in Hagerstown and the Mid-Atlantic. Mansoor and Janet Shaool were to own 50% of those properties in exchange for paying the pre-development expenses and guaranteeing the construction loans. Sassan Shaool, Mr. Henry, and Mr. Neuman were to divide the other 50% ownership interest evenly among themselves in compensation for their work and expertise. (Initially, a 50% interest in the properties was to be divided equally among Mr. Henry, Mr. Neuman, Sassan Shaool, and a fourth partner. Shortly after Mr. Henry moved to Hagerstown, the fourth partner left the partnership, and all partners agreed that the 50% would be divided equally among Mr. Henry, Mr. Neuman, and Sassan Shaool, with each owning 16.666%.)

13. Thus, in consideration for Mr. Henry's move to Hagerstown and for his services in locating and purchasing property, obtaining zoning and other necessary approvals, and other services related to developing the shopping centers, the Shaool family and Mr. Henry agreed that Mr. Henry would own 16.666% of all properties on the development of which he worked with the Shaools, including the shopping centers in Carlisle and Hagerstown. In addition, Mr. Henry was provided with a town home in Hagerstown and an interim salary while developing the shopping centers.

14. Mr. Henry, Mansoor and Janet Shaool, Sasaan Shaool, and Mr. Neuman became partners and joint venturers pursuant to this oral agreement, and Mr. Henry contributed valuable services to the partnership.

15. In 2003, Mr. Henry, Mansoor and Janet Shaool, Sassan Shaool, and Mr. Neuman formed a limited liability company, Washco-Carlisle Crossing, LLC, to develop the Carlisle Crossing shopping center in Carlisle, Pennsylvania.

16. The written Limited Liability Company Agreement of Washco-Carlisle Crossing, LLC, dated December 23, 2003, and signed by Mr. Henry, Mansoor and Janet Shaool, Sassan Shaool, and by Dave Neuman as President of Timm, Inc. provided that Mansoor and Janet Emral Shaool would own 50% of the corporation, and Mr. Henry, Sassan Shaool, and Timm, Inc. would each own 16.666%.

17. The parties agreed that the ownership of Washco-Hagerstown Galleria, LLC, the entity that they agreed to form to develop a shopping center in Hagerstown, would be the same as the ownership of Washco-Carlisle Crossing, LLC.

18. Throughout the development of the Hagerstown Galleria, Mr. Henry repeatedly requested that the defendants memorialize the terms of the joint venture in a written document. Defendants assured Mr. Henry that they would do so, yet consistently delayed entering into a written agreement.

19. In or about August 2003, Mr. Henry identified a parcel of land suitable for the shopping center the parties intended to develop in Hagerstown.

20. The parties initially agreed that Mansoor Shaool would contribute funds to the partnership with which the partnership would purchase the property on which to build the Hagerstown Galleria, as well as guarantee the construction loan.

21. At the request of the property's owner, the partnership and its members agreed that Mansoor Shaool would personally enter into a contract to purchase the property, which he agreed to assign to the partnership upon acquisition.

22. On behalf of the partnership, Mr. Henry negotiated the purchase of several adjoining parcels of land needed for access to the shopping center.

23. At least one of these parcels was purchased by Mr. Henry, in his name, and was to be assigned to the joint venture.

24. On behalf of the partnership, Mr. Neuman and Mr. Henry, with some assistance from Sassan Shaool, contacted retailers who might have interest in opening stores in the shopping center, and several agreed to do so. Those retailers provided letters of intent to lease approximately fifty percent of the one million square feet planned for the Hagerstown Galleria.

25. In or about August 2004, Mr. Neuman and his company, Timm, Inc., negotiated with the Shaools to withdraw as partners in the development of Hagerstown Galleria. The remaining partners and Adam Shaool agreed that, upon Timm, Inc.'s withdrawal, Mansoor and Janet Shaool would continue to own 50% of Washco-Hagerstown Galleria, LLC, that Sassan Shaool and Mr. Henry would each own 20%, and that Adam Shaool would own 10%.

26. Mr. Henry drafted a Limited Liability Company Agreement for Washco-Hagerstown Galleria, substantially the same as the Washco-Carlisle Crossing LLC Agreement, with the partnership shares adjusted to reflect the agreed-upon withdrawal of Mr. Neuman and Timm, Inc. and the addition of Adam Shaool as a partner.

27. Mr. Henry and Sassan Emral Shaool signed the Limited Liability Agreement of Washco-Hagerstown Galleria, LLC, but the other defendants did not.

28. The parties registered the company with the Maryland State Department of Assessments and Taxation.

29. None of the defendants objected to registering the company.

30. Throughout the development of the Hagerstown Galleria, Mr. Henry negotiated with third parties as a principal of the partnership.

31. The defendants were aware that Mr. Henry represented to third parties that he was a principal of the venture. At no time did any of the defendants object to Mr. Henry acting as a principal or advise any third parties that Mr. Henry was not a principal of the partnership.

32. As of the Fall of 2004, based on the site plan and the executed letters of intent, a valuation was prepared, based on which the Hagerstown Galleria project was valued at approximately $100 million.

33. In or about October 2004, the defendants froze Mr. Henry out of the partnership.

34. The defendants falsely claimed that Mr. Henry was merely an employee of the venture and purported to terminate his employment.

35. Since that time, the defendants have refused to allow Mr. Henry to participate in the business of the joint venture, have failed to provide him with financial or other information regarding the partnership, and have misrepresented the status of the shopping center's development to him.

## COUNT I
### Declaratory Judgment

36. The foregoing paragraphs are incorporated herein by reference.

37. The parties entered into an oral joint venture/partnership agreement pursuant to which Mr. Henry owns twenty percent (20%) of the Hagerstown Galleria project and any successor projects making use of the land acquired for that project.

38. That oral agreement was later memorialized in a written document creating Washco-Hagerstown Galleria LLC, of which Mr. Henry has a twenty percent (20%) membership interest.

39. The defendants have breached the terms of both the oral and written agreements by seizing complete control over the Hagerstown Galleria project, refusing to recognize Mr. Henry's ownership interest in the project, and refusing to provide him with accurate information regarding the project's status.

40. There is an actual controversy between the parties regarding their contractual rights.

WHEREFORE the Court should find and declare that the parties entered into a partnership, that Mr. Henry owns a twenty percent interest in the partnership, and that Mr. Henry possess all rights of a partner, including, but not limited to, the right to share profits and the right to inspect the partnerships's books and records, award costs, and award such other and further relief as the Court deems just and appropriate.

## COUNT II
### Breach of Contract

41. The foregoing paragraphs are incorporated herein by reference.

42. The parties entered into an oral joint venture/partnership agreement pursuant to which Mr. Henry owns twenty percent (20%) of the Hagerstown Galleria project and any successor projects making use of the land acquired for that project.

43. That oral agreement was later memorialized in a written document creating Washco-Hagerstown Galleria LLC, of which Mr. Henry has a twenty percent (20%) membership interest.

44. The defendants have breached the terms of both the oral and written agreements by seizing complete control over the Hagerstown Galleria project, refusing to recognize Mr. Henry's ownership interest in the project, and refusing to provide him with accurate information regarding the project's status.

45. Mr. Henry has been harmed by these breaches, including the loss of his ownership interest in a project valued at $100 million and his share of its future revenues.

WHEREFORE the Court should award Mr. Henry compensatory damages, costs, and such other and further relief as the Court deems just and appropriate against the defendants, jointly and severally.

## COUNT III
### Breach of Fiduciary Duty

46. The foregoing paragraphs are incorporated herein by reference.

47. The parties entered into an oral joint venture/partnership agreement pursuant to which Mr. Henry owns twenty percent (20%) of the Hagerstown Galleria project and any successor projects making use of the land acquired for that project.

48. No legal cause exists under which Mr. Henry can be dissociated from the partnership.

49. As partners, the defendants owe Mr. Henry fiduciary duties of loyalty and due care.

50. The defendants know that Mr. Henry is a twenty percent owner of the Hagerstown Galleria project and have breached their fiduciary duties by intentionally refusing to acknowledge his ownership interest, failing to provide him with accurate information regarding the project's status, and refusing to allow him access to the partnership's books and records.

51.     The defendants acted intentionally, willfully, with deliberate indifference to Mr. Henry's rights, and with actual malice, intending to freeze Mr. Henry out of the partnership for their personal benefit.

WHEREFORE the Court should award Mr. Henry compensatory damages (or in the alternative, determine the buyout price for Mr. Henry's partnership interest) against the defendants, jointly and severally; award punitive damages against each defendant; order the defendants to provide an accounting of all partnership assets; award costs; and award such other and further relief as the Court deems just and appropriate.

## COUNT IV
## Fraud

52.     The foregoing paragraphs are incorporated herein by reference.

53.     Mr. Henry did not want to be an employee of the Hagerstown Galleria project and would not have provided services to the project without an ownership interest.

54.     Defendants Mansoor Shaool and Sassan Shaool owed Mr. Henry a fiduciary duty to act in good faith during the negotiations leading to the formation of the partnership and thereafter.

55.     Defendants Mansoor Shaool and Sassan Shaool knew that Mr. Henry would not work for the Hagerstown Galleria project unless he was a part-owner of the project. To obtain his services, Mansoor and Sassan Shaool represented to Mr. Henry that in consideration for his move to Hagerstown and work on the Hagerstown Galleria project, he owned twenty percent of the project.

56. Mr. Henry was entitled to rely upon the representations of Mansoor and Sassan Shaool that he owned twenty percent of the Hagerstown Galleria project and acted reasonably in relying on those representations.

57. When Mansoor and Sassan Shaool represented to Mr. Henry that he would have a twenty percent ownership interest in the Hagerstown Galleria project, they did not intend to honor that commitment. Mansoor and Sassan Shaool intended to defraud Mr. Henry and to disavow his role in the venture once they had obtained the value of his services.

58. Mansoor and Sassan Shaool acted intentionally, willfully, with deliberate indifference to Mr. Henry's rights, and with actual malice, intending to freeze Mr. Henry out of the partnership for their personal benefit.

WHEREFORE the Court should award Mr. Henry compensatory damages and costs against Mansoor Emral Shaool and Sassan Emral Shaool, jointly and severally; award punitive damages against Mansoor Emral Shaool and Sassan Emral Shaool, and award such other and further relief as the Court deems just and appropriate.

## COUNT V
## Unjust Enrichment

59. The foregoing paragraphs are incorporated herein by reference.

60. Mr. Henry conferred a benefit upon the defendants by performing valuable services in the development of the Hagerstown Galleria project.

61. Defendants knowingly accepted these benefits.

62. The defendants knew that Mr. Henry expected to be compensated with an ownership interest in the Hagerstown Galleria.

63. It is inequitable for the defendants to retain the value of Mr. Henry's services without appropriately compensating him with an ownership interest in the Hagerstown Galleria project.

WHEREFORE the Court should award Mr. Henry compensatory damages and costs against the defendants, jointly and severally, and such other and further relief as the Court deems just and appropriate.

Respectfully submitted,

| | |
|---|---|
| James M. Williams<br>Todd R. Slack<br>Inemesit U. O'Boyle<br>Gauther, Houghtaling & Williams, LLP<br>3500 N. Hullen Street<br>Metairie, LA 70002<br>(504) 456-8600<br>(504) 456-8625 (fax)<br>todd@ghwlaw.net<br><br>(Motions for admission pro hac vice pending) | /s/<br>Andrew D. Freeman, Bar No. 03867<br>Andrew D. Levy, Bar No. 00861<br>Brown, Goldstein & Levy, LLP<br>120 E. Baltimore Street, Suite 1700<br>Baltimore, Maryland 21202<br>(410) 962-1030<br>(410) 385-0869 (fax)<br>adf@browngold.com<br><br>*Counsel for Plaintiff* |

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

/s/
Andrew D. Freeman